[1] Reported in 30 N.W.2d 694.
The trustees of the trust created under the will of Bert J. Enger, deceased, appeal from an order vacating, to the extent necessary to permit the beneficiaries to litigate against the trustees' claims based on their self-dealing with assets of the trust free from any defense that the vacated orders preclude the assertion of the claims, five prior orders of the court, viz., two orders authorizing the sale of securities, two orders allowing annual accounts, and an order authorizing the trustees to consent to the sale of its physical properties by a corporation in which they held stock as such. *Page 231 
The appeal raises the following questions: (1) Whether an order vacating prior orders (a) allowing a trustee's annual account, (b) authorizing a trustee to sell securities, and (c) authorizing a trustee to consent as such to the sale by a corporation in which he holds stock of its physical properties is appealable; (2) whether the court may vacate orders authorizing a trustee to sell assets or to give a consent as trustee, where the trustee is guilty of self-dealing in connection with the transactions involved and conceals that fact; (3) whether, where there is nothing in a trustee's annual account or the proceedings for its allowance to apprise the beneficiaries of the fact that the trustee was guilty of self-dealing or to tender any issue with respect to that question, the order allowing the trustee's annual account isres judicata so as to preclude the subsequent assertion of a claim against the trustee based on self-dealing; and (4) whether, under the circumstances stated in the preceding query, the vacation of an order allowing a trustee's annual account for the purpose of enabling the beneficiaries to assert against the trustee rights arising out of his self-dealing causes legal prejudice to the trustee.
These questions arise in connection with the final accounting. In proceedings under M.S.A. 501.33, the district court confirmed the appointment of the trustees and acquired jurisdiction of the trust as a proceeding in rem. The trustees having filed their final account and noticed it for hearing, the beneficiaries filed objections thereto charging the trustees with self-dealing, waste, and failure to account for trust funds, and sought to hold them liable by reason thereof. To the objections, the trustees filed an answer. So far as concerns any liability for alleged self-dealing, the trustees contended that the vacated orders were res judicata of all matters in controversy and precluded the beneficiaries from litigating their claims. Thereupon the beneficiaries moved to vacate the orders to the extent necessary to enable them to litigate, free from any bar arising by reason of res judicata
or otherwise, the questions of self-dealing and resulting liability by reason thereof. On the motion to vacate, the court heard oral testimony and other evidence, from *Page 232 
which it determined that the trustees had been guilty of such self-dealing as to require vacation of the orders in question to enable the beneficiaries to litigate free from any bar on account of the orders the questions concerning self-dealing by the trustees and liability on their part arising by reason thereof.
Because of the generality of the claims and the defenses thereto set forth in the objections and the answer thereto, we are not sure whether we understand precisely what relief the objectors seek or what defenses the trustees interpose to the claims asserted against them. These may properly be left for determination in the course of the trial upon the merits. For present purposes, enough appears to show that the objectors claim that the trustees were guilty of self-dealing in connection with four separate transactions and of waste and failure to account for trust funds. No point has been made here with respect to the claims for waste and failure to account, and for that reason those matters need not be further considered.
The four transactions with respect to which objectors contend the trustees are liable by reason of self-dealing and the grounds of such liability may be briefly stated as follows:
(1) That in the sale, pursuant to court order of December 16, 1936, of 1,279 shares of common stock of Enger Olson, Inc., trustee Leraan was personally interested as a purchaser and that the stock was sold at much less than its real value, with resulting loss to the trust of $69,500 according to one valuation and $44,765 according to another; (2) that the trustees by an ex parte order of February 27, 1940, were authorized to consent as trustees to the sale by Marine Iron 
Shipbuilding Company of Delaware, herein referred to as Old Marine, to a corporation having the same name, organized under the laws of Minnesota, herein referred to as New Marine, of Old Marine's physical properties in exchange for one-third of the common stock of New Marine, which authorization trustee Leraan, who then was president and a director of Old Marine by reason of the trustees' ownership of stock therein, used in connection with others to promote and organize New Marine, part of the plan for which *Page 233 
provided that Leraan should receive one-sixth of its common stock and the right to purchase additional stock amounting to $1,000, which it was arranged should be paid for out of New Marine's earnings; and that, although New Marine's earnings were sufficient to declare dividends, which if distributed would have enabled Old Marine with the dividends which it would have received from New Marine to make its common stock worth its par value and to provide for the retirement of its preferential preferred stock and ordinary preferred stock, Leraan and his associates by means of excessive salaries, bonuses, diversion of both corporate profits and corporate funds, appropriated to their own use such large amounts of New Marine's earnings that Old Marine was thereby prevented from receiving dividends on its stock therein in the amounts to which it was entitled, and that thereby the trustees caused loss to the beneficiaries by depreciating the sale value of stocks held by the trustees in Old Marine; (3) that the trustees sold 79 1/3 shares of preferential preferred stock of Old Marine to nominees of trustee Leraan for his benefit and 88 1/3 shares of ordinary preferred stock of the same corporation for $1 a share, which would have been worth at least $270 a share if the dividends to which Old Marine was entitled from New Marine had been declared and paid; that thereby the beneficiaries sustained a loss of $42,104.34; that, in addition, Old Marine's common stock, which if it had received the dividends in question would have been worth at least its par value of $4,500, was charged off by the trustees as worthless, and that they should be surcharged by reason thereof for an additional $4,500; and (4) that the trustees, pursuant to court order of December 27, 1945, sold to Roy H. Olson 408 shares of preferred stock of Enger Olson, Inc. and 64 shares of stock of Duluth National Bank for $37,000, which was $10,200 less than its real value; and that trustee Leraan was personally interested in the sale as a purchaser.
It appears (1) that the order of December 16, 1936, authorizing the sale of the 1,279 shares of common stock of Enger Olson, Inc. was granted after notice and hearing and that the beneficiaries at *Page 234 
the hearing expressed in effect satisfaction and approval of the sale; that on September 21, 1937, the court by order allowed the annual account of the trustees for the year from August 1, 1936, to July 31, 1937, showing the sale pursuant to the order of December 16, 1936; (2) that, while the order of February 27, 1940, authorizing the trustees as such to consent to the exchange by Old Marine of its physical properties for one-third of the stock to be issued by New Marine was an ex parte one, the court made an order about nine months afterward allowing the trustees' annual account for the year from August 1, 1939, to July 31, 1940, which recited: "By an order of the court dated on the 27th day of February, 1940, your petitioners were authorized to enter into an agreement with the Marine Iron and Shipbuilding Company for the purpose of consummatingtheir plan of reorganization as fully described in yourpetitioners' petition on that subject"; (3) that, while there was no prior order authorizing the sales of 79 1/3 of preferential preferred and of the 88 1/3 of ordinary preferred stock of Old Marine, the court by order of November 23, 1942, allowed the trustees' annual account for the year from August 1, 1941, to July 31, 1942, which contained an entry showing a sale of 79 1/3 shares of the preferential preferred stock for $79.33 and a book loss of 7,800.72; and (4) that there was no further order concerning the sale under the order of December 27, 1945.
The beneficiaries contend that the fact is, and that the evidence taken upon the motion to vacate shows, that Leraan's individual interest and self-dealing in the transactions mentioned were concealed by the trustees from the beneficiaries and from the court. It appears without dispute that there is no mention of it in any of the proceedings in connection with the orders mentioned. The beneficiaries contend that, because of the concealment by the trustees of their self-dealing in connection with the transactions covered by the vacated orders and the failure of the trustees in the proceedings in which the orders were obtained to tender any issue with respect to self-dealing, the vacated orders, even if they had remained unvacated, were not res judicata of any issue raised by the *Page 235 
objections to the trustees' final account; and that, because that is true, it was not necessary as a matter of law to vacate the orders to enable them to assert their claims against the trustees. The beneficiaries state that they procured the vacation of the orders as protection as against an adverse ruling upon the trial, if any should be made, with respect to their contention on the question of res judicata. In this connection, the beneficiaries admit that the vacating order would not be res judicata upon the trial as to the issues raised on the motion to vacate. They assert that all parties may then litigate the issues between them as fully as though none of the orders in question had been made.
The trustees contend that all the vacated orders are in effect judgments; that they can be vacated, if at all, only for extrinsic fraud; that there was no showing of extrinsic fraud to support the order of vacation; that under § 548.14 a judgment or an order having the attributes of a judgment cannot be vacated except within three years after the party has notice of the fraud; that under § 544.32 a judgment cannot be opened except within one year after such notice; that in the case of every order the beneficiaries had notice within the times mentioned of all the facts on which they base their claims against the trustees; and that consequently they are not entitled to any relief.
The beneficiaries, as respondents, move to dismiss the appeal upon the ground that the vacating order is nonappealable. This question will be discussed after we have indicated the rules applicable to the different orders, of which we have at least two kinds here, viz., those having the determinative effect of final judgments and those which do not.
1. An order made in proceedings under § 501.35 allowing the annual account of a trustee has the legal effect of a final judgment. The statute, so far as here material, provides that a trustee may file and petition the court for the settlement and allowance of any account, whereupon the court shall set the matter for hearing and give notice thereof as therein provided; and that "Upon such hearing the court shall make such order as it deems appropriate, which *Page 236 
order shall be final and conclusive as to all matters thereby determined and binding in rem upon the trust estate and upon the interests of all beneficiaries, * * * except that appeal to the supreme court may be taken from such order within 30 days from the entry thereof * * *." The statute denominates an order allowing an account thereunder an "order," and, because that is true, we are bound by that characterization. But the statute also provides that the legal effect of such an order is that it is final and conclusive as to all matters thereby determined, the meaning of which we think is that the determinative effect of such order shall be the same as a final judgment. The statute is freighted with manifestations of such meaning, not only by its declaration as to the legal effect of such an order, but also by the proceedings required to be had in order to procure one. Ordinarily, the word "final" when used to designate the effect of a judgment or order means that it ends or terminates the matter or proceeding in which it is rendered, subject only to appellate review. Rondeau v. Beaumette, 4 Minn. 163
(224). A final order is one that ends the matter or proceeding so far as the court making it is concerned. In re Guardianship of Jaus, 198 Minn. 242, 269 N.W. 457. While the word "conclusive," when used in such a connection, carries with it implications of finality, it means and denotes that the matter decided is irrefutable and not admitting of any explanation or contradiction. 15 C.J.S. p. 802. The words "final" and "conclusive" are used in the law to denote the legal effect of final judgments as determining a question in such a manner as to terminate or end the matter in such a manner as to preclude all future inquiry concerning the truth thereof. The cases and texts use the words with such meaning. Melady-Briggs Cattle Corp. v. Drovers State Bank, 213 Minn. 304,6 N.W.2d 454; Ingelson v. Olson, 199 Minn. 422,272 N.W. 270, 110 A.L.R. 167; Barrett v. Smith, 183 Minn. 431,237 N.W. 15; Thaw v. Detroit Trust Co. 307 Mich. 6, 11 N.W.2d 305; Will of Pattison, 190 Wis. 289, 207 N.W. 292; 3 Dunnell, Dig. Supp. § 5163; 50 C.J.S., Judgments, § 699; 31 Am. Jur., Judgments, *Page 237 
§ 525; 30 Am. Jur., Judgments, §§ 148, 149, 197; Restatement, Judgments, §§ 1, 41, 42.
Prior to the enactment of § 501.35, the language of the statute was used to express the same thought with respect to the finality and conclusiveness of orders allowing both final and intermediate accounts of trustees. In re Trusteeship Under Will of Melgaard, 200 Minn. 493, 274 N.W. 641.
The proceedings for procuring an order allowing an account and for the determination of questions concerning the matter at a hearing show clearly that the order should have determinative effect.
The further provision for an appeal from such an order is indicative of an intention that it shall be final and conclusive as we have defined it. Ordinarily, an appeal is not allowed except from an order which is final as to the matter which it determines. Where an appeal is allowed, it is done generally upon the assumption that the order is final and conclusive and that an appeal from it is necessary to review and correct any error in it. See, In re Guardianship of Overpeck, 211 Minn. 576, 2 N.W.2d 140, 138 A.L.R. 1375.
The effect of making an order allowing an annual account final and conclusive as to matters thereby determined is, in the language of Barrett v. Smith, 183 Minn. 431, 438,237 N.W. 15, 18, to attribute to each order the finality of a judgment, and so, instead of one final and formal adjudication of the whole matter as in ordinary actions, we have a succession of judgments in the same case settling it piecemeal.
2. The provision to the effect that such order shall be made after "hearing" upon notice and that the finality and conclusiveness of such order shall extend "to all matters thereby determined" not only defines the extent to which such an order shall be final and conclusive, but also limits it. A requirement of "hearing" in judicial proceedings, aside from any constitutional requirement of due process, by common consent presupposes a proceeding before a competent tribunal for the trial of issues between adversary parties, *Page 238 
the presentation and consideration of proofs and arguments, and determinative action by the tribunal with respect to the questions raised by the issues presented. Bowles v. Baer (7 Cir.) 142 F.2d 787; In re Securities and Exchange Comm. (2 Cir.) 84 F.2d 316 (reversed on other grounds, 299 U.S. 504,57 S.Ct. 18, 81 L. ed. 374); Keown v. Keown, 231 Mass. 404,121 N.E. 153. See, State ex rel. Blaisdell v. Billings,55 Minn. 467, 57 N.W. 206, 43 A.S.R. 525; Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L. ed. 232; Davidson v. New Orleans, 96 U.S. 97, 24 L. ed. 616; Munn v. Illinois, 94 U.S. 113, 24 L. ed. 77; State v. Rose, 33 Del. 168,132 A. 864, 45 A.L.R. 85; 12 C. J., Constitutional Law, § 957; 16 C.J.S., Constitutional Law, §§ 567, 568; 12 Am. Jur., Constitutional Law, §§ 568, 569, 573, 609. The term "hearing" is usually used in connection with proceedings in equity, and the term "trial" when the proceeding is at law. Menard v. Bowman Dairy Co. 296 Ill. App. 323, 15 N.E.2d 1014. Applicable to a "hearing," therefore, is the language used in defining the word "trial" in State v. Bergman, 37 Minn. 407,408, 34 N.W. 737, 738, where we said: "The word 'trial,' * * * means the judicial hearing upon the issues in a cause for the purpose of determining it, * * *." (Italics supplied.)
The matters determined in an action or judicial proceeding are the questions decided in determining the issues raised by the conflicting claims of the parties. Wolfson v. Northern States Management Co. 221 Minn. 474, 22 N.W.2d 545; Maryland Cas. Co. v. Baune, 184 Minn. 550, 239 N.W. 598; Gustafson v. Gustafson, 178 Minn. 1, 226 N.W. 412; 3 Dunnell, Dig. Supp. §§ 5162, 5163. The word "matter" is used in such connections as "matters in controversy," "matters in dispute," and "matters in issue" as referring to the cause of action asserted in the complaint and the issue joined thereon. Smith v. Adams, 130 U.S. 167, 9 S.Ct. 566, 32 L. ed. 895; 26 Wd. 
Phr. (Perm. ed.) "Matters" to "Matters in Issue," pp. 730-743.
In a trustee's accounting, the "matters" involved include the transactions set forth in the trustee's account and the petition for *Page 239 
the allowance thereof and the objections thereto, if any. The pleadings consist of the account and the petition on the one side and of the objections thereto on the other. Matter of Hearns, 214 N.Y. 426, 108 N.E. 816. The issues are framed by the account and the petition and the objections thereto as the pleadings in an accounting proceeding. 4 Bogert, Trusts and Trustees, § 969, p. 2820. Here, since there were no objections to the annual accounts, the matters determined by the orders allowing the annual accounts were those put in issue by the accounts and the petitions for the allowance thereof filed by the trustees. The proceedings having been by default, the court had jurisdiction to determine only the questions thus raised. Duenow v. Lindeman, 223 Minn. 505, 27 N.W.2d 421.
3. Self-dealing by a trustee is not a matter involved in an accounting proceeding by a trustee where the account and the petition for the allowance thereof do not apprise the beneficiaries of the fact. Matter of Lewisohn, 294 N.Y. 596,63 N.E.2d 589; Matter of Ryan, 291 N.Y. 376,52 N.E.2d 909; Matter of L. I. L. T. Co. (In re Garretson) 92 App. Div. 1,87 N.Y. S. 65 (affirmed, 179 N.Y. 520, 71 N.E. 1133); Matter of Denbosky, 245 App. Div. 93, 280 N.Y. S. 859; In re Weinberg's Will, 63 N.Y. So.2d 472; Matter of Weir,182 Misc. 845, 46 N.Y. So.2d 551; Matter of Adler, 164 Misc. 544,299 N.Y. S. 542; Matter of Peck, 152 Misc. 315,273 N Y S. 552; 65 C. J., Trusts, § 861.
It is the trustee's duty to disclose to the beneficiary fully, frankly, and without reservation all facts pertaining to the trust. In re Trusteeship Under Will of Rosenfeldt,185 Minn. 425, 430, 241 N.W. 573, 575. In the cited case, our decision related to the trustee's duty of disclosure in extrajudicial transactions. The duty of disclosure does not end at the commencement of a legal proceeding, but continues to be just as obligatory therein as it was prior thereto. That being true, the duty rests on the trustee in accounting proceedings to make the fullest measure of disclosure. Laun v. Kipp,155 Wis. 347, 145 N.W. 183, 5 A.L.R. 655, and Annotation; 3 Freeman, Judgments (5 ed.) § 1235. In the Laun case, which is *Page 240 
probably the leading one, the court held that failure to disclose self-dealing constituted extrinsic fraud within the rule of United States v. Throckmorton, 98 U.S. 61,25 L. ed. 93, which we followed in In re Estate of Jordan, 199 Minn. 53,271 N.W. 104, and said (155 Wis. 373, 145 N.W. 192):
"Here the respondent [trustee], as before suggested, owed to appellants [beneficiaries] the active duty, independently of any litigation, to make a full disclosure of his transactions as trustee. That duty he owed, in a high degree, in the litigation, and also he owed the duty of making such disclosure to the court and to its referee. According to the complaint he not only failed in this respect, preventing thereby appellants from having the benefit thereof in the litigation, but palmed off on all parties a spurious deceptive paper as a disclosure and thus secured the judgment complained of. If those facts can be established, they will make a case fairly within the Throckmorton rule * * *."
Because a beneficiary may rely upon the disclosures in the trustee's account and the petition for its allowance, a proceeding for the allowance of the account does not impose upon the beneficiary as an ordinary adversary the burden of making his own inquiry to ascertain the truth of the trustee's disclosures. The beneficiary may accept them as true. In this respect the rule is different from what it is in ordinary litigation, where the parties are not only adversary, but where there is no fiduciary relationship. In Hass v. Billings,42 Minn. 63, 67, 43 N.W. 797, 798, we held that "When an issue is squarely made in a case, so that each party knows what the other will attempt to prove, and neither has a right, or is under any necessity, to depend on the other proving the fact to be as he himself claims it," a party is not excused in relying upon his adversary's allegations as to what the facts are. But in pointing out that the rule is different in accounting proceedings the Wisconsin court said in the Laun case (155 Wis. 373, 145 N.W. 192):
"* * * It is not a case where one may by mere silence permit a judgment to go in his favor, which is unjust. In ordinary situations *Page 241 
one may, legally if not morally, keep silent and profit by his adversary's ignorance. That is neither fraud, intrinsic, as in case of perjury, nor fraud, extrinsic, within the Throckmorton rule. But where there is a solemn duty to speak, independently of coercion, and in judicial controversy as well, whether asked to speak or not, and there is a failure to speak, resulting in the enrichment of the wrongdoer and the impoverishment of the one to whom that duty is owing, there is a fraud of most serious nature and, in a sense, both intrinsic and extrinsic."
Here, there is not one word in any of the petitions and accounts or in the proceedings for the allowance of the annual accounts apprising the beneficiaries of any self-dealing on the part of the trustees. On the contrary, all information with respect to the matter was concealed. Hence no issue was tendered by the trustees in any of the prior proceedings concerning any self-dealing. The self-dealing was not, therefore, a matter determined by any of the orders relied on as having that effect.
4. From what has been said it must be apparent that the orders allowing the trustees' annual accounts are not resjudicata as to self-dealing by the trustees. Section 501.35, as the controlling statute, determines the extent to which such orders are res judicata. 4 Bogert, Trusts and Trustees, § 973. The statute in express terms provides that such orders shall be final and conclusive as to all matters thereby determined. The effect of this provision is that if the matter was determined by the order the order is res judicata, and if the matter was not so determined the order is not res judicata. This is the rule independent of statute. In re Trusteeship Under Will of Melgaard, 200 Minn. 493, 274 N.W. 641; Earll v. Picken,72 App. D.C. 91, 113 F.2d 150; 65 C. J., Trusts, § 861. It has been held that where an investment is listed in the account, but the facts showing its illegality are not, the order is not resjudicata as to the question of the illegality of the investment, because the mere listing of it fails to apprise the beneficiaries of the fact of illegality. Brown v. Fidelity Union Trust Co. 135 N.J. Eq. 404, *Page 242 39 A.2d 120; Rothenberg v. Franklin Washington Trust Co. 129 N.J. Eq. 361,19 A.2d 640; Matter of Shaw, 122 N.J. Eq. 536,195 A. 525.
In New York, it has been held in numerous cases that where self-dealing is concealed, as where the facts with respect thereto are not stated in the trustee's account or the petition for the allowance thereof, self-dealing is not a matter "embraced" in the accounting proceedings within the meaning of the statute providing that surrogate decrees shall be final and conclusive "as to all matters embraced therein" (7 Wait, New York Practice Simplified [4 ed.] p. 145); that in such cases no issue as to self-dealing is tendered; and that consequently the order is not res judicata as to the question of self-dealing. Matter of Ryan, 291 N.Y. 376, 52 N.E.2d 909; In re Weinberg's Will, 63 N.Y. So.2d 472; In re Lawyers Title 
Guaranty Co. 184 Misc. 241, 51 N.Y. So.2d 122, and other New York cases cited supra. As said in Matter of Denbosky, 245 App. Div. 93,96, 280 N.Y. S. 859, 862:
"It follows that the decree, limited in operation to matters actually embraced therein * * * does not bind the petitioner to accept payment of the legacy in mortgage certificates whichwere never disclosed in the accounting proceedings nor approvedas an investment." (Italics supplied.)
In Matter of Adler, 164 Misc. 544, 552, 299 N.Y. S. 542,553, in holding that an order allowing a prior account was notres judicata the court said: "The question being wholly open and the decree not operating as a bar the court must determine what petitioners' rights are on the facts conceded." While the language of the New York statute differs from ours, the content and the meaning of both is the same. By limiting the resjudicata of such orders to matters thereby determined, the statute in effect adopts the well-settled rule (Alexander v. Thompson, 101 Minn. 5, 111 N.W. 385; 3 Dunnell, Dig. § 5162, note 95) that a judgment is not res judicata as to matters not in issue.
A further reason why the orders allowing the annual accounts are not res judicata as to self-dealing by the trustees is that the *Page 243 
right of the beneficiaries to hold the trustees liable for self-dealing amounts to a separate cause of action for each act of self-dealing. While a judgment is conclusive of every matter that might have been litigated, it is not conclusive of equities entitling a party to affirmative relief and counterclaims which might have been asserted but were not. Wolfson v. Northern States Management Co. 221 Minn. 474,22 N.W.2d 545; Gustafson v. Gustafson, 178 Minn. 1,226 N.W. 412. The self-dealing involved a breach of the trustees' duty of undivided loyalty to the beneficiaries (Smith v. Tolversen,190 Minn. 410, 252 N.W. 423; King v. Remington, 36 Minn. 15,29 N.W. 352; 6 Dunnell, Dig. Supp. § 9934; Restatement, Trusts, § 170) giving rise to an equitable cause of action. 54 Am. Jur., Trusts, §§ 570, 250-254. We recognized the rule to be of this effect in Fleischmann v. Northwestern Nat. B. T. Co.194 Minn. 227, 260 N.W. 310. There is present here every element of a cause of action — a primary duty and a violation thereof, a duty and a delict. King v. C. M. St. P. Ry. Co.80 Minn. 83, 82 N.W. 1113, 50 L.R.A. 161, 81 A.S.R. 238; Pomeroy, Code Remedies (5 ed.) § 347, p. 528; 5 Dunnell, Dig. 
Supp. § 7528d.
The case of In re Trusteeship Under Will of Melgaard,200 Minn. 493, 274 N.W. 641, is not authority for the proposition that an order allowing a trustee's intermediate account isres judicata as to matters not included in the accounting proceedings. Decision there proceeded upon the theory that the matters as to which the orders were held to be res judicata had been included in the accounting proceedings and there submitted for decision. We there said (200 Minn. 502, 274 N.W. 646):
"A judgment has been well defined as 'the final consideration and determination of a court of competent jurisdiction upon the matters submitted to it, in an action or proceeding.' 15 R.C.L. 569. Why should not the so-called preliminary orders, all of them, be considered judgments rendering their subject matterres judicata? There was jurisdiction of subject matter and of the parties; there was submission of matter for decision, and decision on the merits. *Page 244 
There was no contest or trial, but what of it? There was opportunity for contest and trial. That is sufficient. 15 R.C.L. 953."
Here, because the annual accounts and petitions for their allowance contained no allegation or statement apprising the beneficiaries of the fact of self-dealing and hence tendered no issue with respect to the matter, there was neither opportunity nor occasion for contest and trial of the question. While, perhaps, if they had known the facts, the beneficiaries might have asserted in the annual accounting proceedings, as they are doing here, claims in the nature of counterclaims based on self-dealing, they were not required to do so; and, as has been pointed out, the orders are not res judicata as to such claims.
5. Since the orders allowing the annual accounts of the trustees are not res judicata of the question whether the trustees are liable for self-dealing, it can make no possible difference whether they were vacated to permit litigation of the question. That is what was done here. The effect of the vacating order is to permit the beneficiaries to do what they had a right to do anyway. Matter of L. I. L. T. Co. (In re Garretson) 92 App. Div. 1, 87 N.Y. S. 65 (affirmed, 179 N.Y. 520,71 N.E. 1133); Matter of Ryan, 181 Misc. 566, 576, 48 N Y So.2d 522, 533. That being true, it is immaterial whether the evidence sustains all the findings of fact implicit in the decision granting vacatur, because under the circumstances no prejudice could result. In many cases, amendment of a judgment without changing the legal effect thereof has been held to cause no prejudice. Sells v. Grand Trunk Western Ry. Co. 206 Ill. App.? 58; Knotts v. Crossly, 1 Neb. (Unof.) 730, 95 N.W. 848; Brizse v. Lisman, 231 N.Y. 205, 131 N.E. 891. Here, the limited vacation of the orders did not change their legal effect. Vacatur corresponded with non res judicata. Hence there was no prejudice.
That being true, it is entirely immaterial whether an order allowing a trustee's account under the statute can be vacated only in some particular way, as by an action in equity or by proceedings *Page 245 
under either § 548.14 or § 544.32. It is not necessary therefore to pass upon those questions in deciding the case.
6. The vacating order is appealable so far as it relates to the orders allowing the trustees' annual accounts. Since the vacated orders have the legal effect of judgments, the rules applicable to vacating a judgment apply. An order vacating a judgment is appealable. Vasatka v. Matsch, 216 Minn. 530,13 N.W.2d 483; Morehart v. Furley, 152 Minn. 388, 188 N.W. 1001. But the vacating order is not appealable as to the other orders which it vacates. Under the doctrine of Barrett v. Smith,183 Minn. 431, 237 N.W. 15, these orders remained under the control of the court and were subject to be vacated at any time without right of appeal from the vacating order. The ex parte order was not appealable. Sheehan v. Hall, 187 Minn. 582,246 N.W. 353. An order vacating a non-appealable order is not appealable. Brown v. Minnesota Thresher Mfg. Co. 44 Minn. 322,46 N.W. 560; 1 Dunnell, Dig. Supp. § 304.
Where an appeal is taken from an order which is in part appealable and in part not so, the appeal brings up for review only the part of the order which is appealable. Marty v. Nordby, 201 Minn. 469, 276 N.W. 739. The fact that the appeal is from an entire order, part of which is appealable and part of which is not, is no ground for dismissal of the appeal. An appeal from separate orders, some of which are appealable and some not, is good so far as it relates to the appealable orders. Sundberg v. Goar, 92 Minn. 143, 99 N.W. 638. So it is here as to the parts of the vacating order which are appealable. In re Estate of Williams, 217 Minn. 634,13 N.W.2d 736; Julius v. Lenz, 212 Minn. 201, 3 N.W.2d 10.
Our conclusion is that the vacating order is appealable so far as it relates to the orders allowing the trustees' annual accounts; that the vacating order is without prejudice, since it permits the beneficiaries to litigate claims against the trustees for breach of trust only in respects as to which the orders allowing annual accounts are not res judicata; and that, since the other orders vacated are nonappealable, the vacating order is nonappealable as to them. We *Page 246 
intimate no opinion as to the merits. The case is remanded for further proceedings below.
Affirmed so far as order relates to orders allowing trustees' annual accounts and appeal dismissed as to other parts of the order.
 UPON PETITION FOR CLARIFICATION OF ORIGINAL OPINION.
On January 30, 1948, the following opinion was filed: