In re ESTATE AND TRUST OF Walter G. ANDERSON, Deceased.

No. C6–02–450.

Court of Appeals of Minnesota.

Dec. 3, 2002.

William J. Berens, Michael J. Wahoske, David Y. Trevor, Dorsey & Whitney, LLP, and John F. Bonner, III, Robert J. Bor-

hart, Bonner & Borhart, LLP, Minneapolis, MN, for appellant Jacquelin Powell.

Eric J. Magnuson, Patrick J. Rooney, John J. Wackman, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, for respondent Richard G. Anderson.

Considered and decided by MINGE, Presiding Judge, WRIGHT, Judge, and MULALLY, Judge.

## OPINION

MULALLY, Judge.*

This is an appeal from an order allowing a final accounting and issuing a decree of distribution for a trust. Because we are not persuaded that the district court erred in its supervision of the administration of the trust, we affirm.

## FACTS

Walter G. Anderson (decedent), founder of Walter G. Anderson, Inc., and father to the parties in this case, died in February 1997. Seven years earlier, decedent executed three instruments on the same day: a pour-over will, a trust agreement, and a stock-redemption agreement. At his death, decedent owned approximately 37 percent of the outstanding stock of Walter G. Anderson, Inc. (Anderson, Inc.).

The pour-over will named decedent's son, respondent Richard Anderson (Anderson), as personal representative and devised the residuary estate, defined as "all property remaining in [the] estate after payment of all items required by law to be paid therefrom," to the trustee pursuant to the trust agreement. The trust agreement created a trust with decedent and Anderson as trustees; Anderson and his sister, appellant Jacquelin Powell (Powell), were named beneficiaries. The

trust agreement directed the trustee to pay all "death taxes" with proceeds from the redemption of Anderson, Inc. stock held by the trustee pursuant to the stock-redemption agreement. Under the stock-redemption agreement, Anderson, Inc. agreed

> to redeem [on decedent's death] all or a portion of the Company common stock owned by [decedent's] legal representative on [decedent's] date of death in an amount sufficient to pay the death taxes and the allowable funeral and administration expenses arising as a result of [decedent's] death.

The stock-redemption agreement was designed to take advantage of a provision of the Internal Revenue Code that allows a corporation to redeem a deceased shareholder's stock in an amount necessary to pay federal estate taxes and funeral and administration expenses. *See* 26 U.S.C. § 303 (2000).

After decedent's death, Anderson transferred the Anderson, Inc. stock that decedent owned to the trust but did not immediately attempt to have the stock redeemed pursuant to the stock-redemption agreement or pay any estate taxes. Anderson apparently elected to pay the federal estate tax in installments, pursuant to 26 U.S.C. § 6166 (2000). Anderson also attempted to probate decedent's will in Florida, where decedent had lived before moving back to Minnesota, his long-time home, ten months before he died. Powell appeared in and opposed the Florida probate proceeding. The Florida court found that decedent was domiciled in Minnesota when he died, making probate in Florida improper. The will was eventually admitted to probate in Minnesota.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Anderson and Powell have engaged in extensive litigation over decedent's business affairs and estate, but only the recent litigation concerning the trust is relevant to this appeal. In 1998 and 1999, Powell filed petitions seeking to have Anderson replaced as trustee. She alleged that Anderson had failed to comply with the terms of the pour-over will in that he had failed to transfer the stock to the trust before paying any estate taxes. She also alleged that Anderson was unreasonably tardy in redeeming the Anderson, Inc. stock pursuant to the stock-redemption agreement. Powell claimed that this had the effect of reducing her interest in the trust because, so long as the stock remained unredeemed, the liquid assets of the trust, in which she had an interest, were used to pay expenses of the estate, including the estate taxes. In March 2000, a referee ruled on Powell's petition and found that the transfer of the stock before payment of taxes did not violate the terms of the pour-over will. The district court adopted the referee's ruling; Powell chose not to appeal.

In September 2001, a referee heard Anderson's petition for allowance of his final accounting as trustee and for a decree of distribution. Powell again argued that Anderson had not complied with the terms of decedent's pour-over will and that his conduct as trustee amounted to a breach of his fiduciary duty of loyalty to her. By this time, both parties had incurred extensive legal fees because of the litigation relative to the estate, and both sides sought reimbursement from the estate. The referee rejected Powell's arguments concerning Anderson's conduct, allowed Anderson reimbursement for his attorney fees, and denied Powell's request for attorney fees. The district court again adopted the referee's ruling, and Powell now appeals.

## ISSUES

I. Is Powell precluded from challenging the district court's interpretation of decedent's will?

II. If Powell is not precluded from raising the issue, did the district court err in its interpretation of decedent's will?

III. Is the district court's finding that Anderson did not breach his fiduciary duty to Powell clearly erroneous?

IV. Did the district court abuse its discretion by allowing Anderson reimbursement and denying Powell reimbursement for attorney fees from the estate?

## ANALYSIS

### I.

Powell contends that the district court erred by not construing decedent's will to require payment of estate taxes before transferring the Anderson, Inc. stock to the trust. Anderson asserts that the issue of will construction was decided in an earlier proceeding and that Powell is thus precluded from raising it here. In the alternative, Anderson argues that decedent's estate plan countenanced transfer of the stock before payment of taxes.

### A. Preclusive Effect of Earlier Ruling

In June 1999, Powell petitioned the district court to remove Anderson as trustee pursuant to Minn.Stat. § 501B.16 (2002). The district court ruled on the petition in an order filed March 13, 2000. Anderson argues that Powell is precluded from now challenging the findings of fact in that order.

▮▮▮ An order on a petition brought under section 501B.16

> is final as to all matters determined by it and binding in rem upon the trust estate and upon the interests of all beneficia-

ries, vested or contingent, even though unascertained or not in being.

*Id.* § 501B.21 (2002).

[T]he legal effect of such an order is that it is *final* and *conclusive* as to all matters thereby determined[.] * * * The words 'final' and 'conclusive' are used in the law to denote the legal effect of final judgments as determining a question in such a manner as to terminate or end the matter * * * [so] as to preclude all future inquiry concerning the truth thereof.

*In re Enger's Will,* 225 Minn. 229, 236, 30 N.W.2d 694, 699–700 (1948) (citation omitted).

The matters determined in an action or judicial proceeding are the questions decided in determining the issues raised by the conflicting claims of the parties.

*Id.* at 238, 30 N.W.2d at 701 (citations omitted).

Each such order is appealable, and after the time for appeal has expired it may not be collaterally attacked but stands as a judgment on the matters determined by the order. In other words, it is res judicata on the issues of fact involved in the hearing even if based on an erroneous theory of law.

*In re Trust Created by Warner,* 263 Minn. 449, 455, 117 N.W.2d 224, 228 (1962) (citations omitted).[1]

In her June 1999 petition, Powell alleged:

12. Instead of redeeming stock as required by the Will Instrument and Stock Redemption Agreement, Richard Anderson transferred all stock to the trust and paid, and continues to pay,

expenses attributable to the estate, including initial estate taxes, from property belonging to the trust. * * * His actions * * * [are] directly contrary to the instructions of the Will Instrument, the Stock Redemption Agreement, and the trust instrument, and are a direct attempt to preserve his stock distribution at the expense of other beneficiaries.

* * * *

31. Given the issues [Powell] and her attorneys have identified, [Powell] is requesting that Richard Anderson be removed as trustee and that either [Powell] or an independent trustee be appointed to marshal the assets of the trust * * *.

The district court, in its ruling on the petition, made the following finding of fact:

While [Anderson] was the personal representative in the Florida [probate] proceeding he transferred the shares owned by his father into the trust. The pourover will clearly contemplated that this would be done and no fault can be attached to that action.

Powell chose not to appeal this finding of fact.

 Powell's petition to remove Anderson as personal representative raises the issue of Anderson's transfer of the stock and failure to pay the estate taxes immediately. In his response to the petition, Anderson denied the allegation. We conclude that this issue was a "matter," as defined in *Enger's Will,* that was decided in the earlier proceeding and thus has preclusive effect on this appeal. *See* 225 Minn. at 238, 30 N.W.2d at 701.

1. *Enger's Will* and *Warner* interpret Minn. Stat. § 501.35, the predecessor to section 501B.21. The statutes contain nearly identical language, except that the predecessor uses the phrase "final and conclusive" where the current statute uses only "final." We do not believe the legislature intended a change in the meaning of the statute when it enacted section 501B.21.

Powell makes two arguments against granting that the earlier finding has preclusive effect on these proceedings. First, she claims that it would be poor public policy to punish her for accepting the earlier finding in good faith. But Powell is responsible for the consequences of not vindicating her right to appeal the finding. Furthermore,

> [t]he effect of making an order * * * final and conclusive as to matters thereby determined is * * * to attribute to each order the finality of a judgment, and so, instead of one final and formal adjudication of the whole matter as in ordinary actions, we have a succession of judgments in the same case settling it piecemeal.

*Id.* at 237, 30 N.W.2d at 700 (citation omitted). We believe that this is a better public policy.

Second, Powell argues that *In re Dutcher*, 26 Minn. 391, 4 N.W. 685 (1880), provides guidance in this case. There, the supreme court reasoned that a probate court's finding, in a proceeding to remove an administratrix, of whether a non-party owned certain property was merely "incidental" to the probate case and was not res judicata to a subsequent proceeding against the non-party. *Id.* at 404, 4 N.W. at 690. Here, *Dutcher* is inapposite because the finding that the pour-over will contemplated the transfer of stock was not "incidental" to the question of whether to remove Anderson as trustee. On the contrary, Anderson's compliance with the estate plan and management of the trust were integral issues. *Dutcher* is therefore unhelpful to Powell's argument.

Thus, we conclude that Powell is precluded from challenging the earlier finding in this proceeding and that her appeal is untimely.

## B. Will Construction

■ Even assuming Powell's appeal on this issue is timely, we are not persuaded that the district court erred by construing decedent's will to allow transfer of the stock before payment of the estate taxes. We review a district court's construction of an unambiguous instrument de novo. *In re Trust Created by Hill*, 499 N.W.2d 475, 482 (Minn.App.1993), *review denied* (Minn. July 15, 1993). But where critical evidence in the case turns on extrinsic language about the testator's intent and disputed expert opinions about the language of the instrument, a "clearly erroneous" standard of review applies. *Id.*

■ The primary purpose of construing a will is to discern the testator's intent. *In re Trust of Wyman*, 308 N.W.2d 311, 315 (Minn.1981). Normally, a court cannot consider extrinsic evidence, such as the trust and stock-redemption agreements in this case, to clarify the testator's intent unless the will is ambiguous. *In re Estate of Zagar*, 491 N.W.2d 915, 916 (Minn.App. 1992).

But there is also ample authority for the proposition that, where a will and a trust form part of the same estate plan, they must be construed together. *Cent. Trust Bank v. Scrivner*, 963 S.W.2d 383, 385 (Mo.Ct.App.1998); 96 C.J.S. *Wills* § 876 (2001); *see also In re Estate of Potter*, 469 So.2d 957, 959 (Fla.Dist.Ct.App.1985) (holding that interdependent language of will and inter vivos trust established that trust was incorporated by reference into will); *cf. In re Estate of Pickrell*, 248 Kan. 247, 806 P.2d 1007, 1013 (1991) (holding that, where a conflict exists between an earlier executed will and a later amended inter vivos trust concerning payment of estate taxes, the last instrument in time controls); *Blochowitz v. Blochowitz*, 130 Neb. 789, 266 N.W. 644, 651–52 (1936)

(construing will in light of four warranty deeds also executed on the same day).

■ We agree with the district court that the will, trust agreement, and stock-redemption agreement should be construed as parts of a single, well-considered estate plan. All three instruments were executed on the same day. More important, the language of the three instruments shows that they are interdependent. The trust agreement requires the trustee to pay "all death taxes of any character." The agreement then directs the trustee to redeem stock held by the trust pursuant to the stock-redemption agreement. Finally, the trust agreement directs the trustee to use the redemption proceeds to pay the "death taxes." Because the trust held no Anderson, Inc. stock at decedent's death, the trustee could not pay the estate taxes as directed unless the stock were first transferred to the trust. Powell maintains that the will language, defining the residuary estate as property remaining "after payment of all items required by law to be paid therefrom," requires payment of estate taxes before any transfer of property in the residuary estate to the trust. But her argument ignores the mechanism that decedent created for paying the estate taxes found in the trust and stock-repurchase agreements.

Thus, we conclude that the district court did not err by construing decedent's will to allow transfer of the stock before payment of the estate taxes.

## II.

Powell next challenges the district court's finding that Anderson did not breach his fiduciary duty to her.

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court.

Minn. R. Civ. P. 52.01.

■ Evidence in the record supports this finding. The district court received expert testimony that the Florida probate proceeding was not unreasonable. More importantly, the record shows that, as trustee, Anderson made distributions to Powell to compensate for any losses to her interest in the trust's assets resulting from his election to pay the estate taxes in installments. Thus, the district court's finding was not clearly erroneous and we will not set it aside.

## III.

■ Finally, Powell challenges the district court's award of attorney fees to Anderson and its refusal to award attorney fees to her. This court reviews a district court's award or denial of attorney fees on an abuse-of-discretion standard. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn.1987).

### A. Anderson's Attorney Fees

■ Powell contends that the district court abused its discretion by allowing Anderson to be reimbursed for attorney fees he incurred in his capacity as personal representative of the estate. Attorney fees incurred on behalf of an estate shall be paid out of the estate if the amount is "just and reasonable." Minn.Stat. § 525.515(a) (2002). In determining whether fees are "just and reasonable," the district court must consider:

(1) The time and labor required;

(2) The experience and knowledge of the attorney;

(3) The complexity and novelty of problems involved;

(4) The extent of the responsibilities assumed and the results obtained; and

(5) The sufficiency of assets properly available to pay for the services[.]

*Id.* § 525.515(b) (2002). Furthermore, a personal representative may be reimbursed for attorney fees spent "defend[ing] any proceeding in good faith, whether successful or not * * *." Minn. Stat. § 524.3–720 (2002).

Here, the district court received expert testimony on the five factors listed in section 525.515(b). The expert concluded that the amount of attorney fees was "reasonable and justified." Powell cites no legal authority suggesting that allowing reimbursement under these circumstances is an abuse of discretion, and we conclude that the award was not improper.

### B. Powell's Attorney Fees

 Powell maintains that her opposition to the Florida probate proceeding and her continuing litigation concerning the delayed redemption of the Anderson, Inc. stock benefited the estate and therefore support reimbursement of her attorney fees from the estate.

> When after demand the personal representative refuses to prosecute or pursue a claim or asset of the estate or a claim is made against the personal representative on behalf of the estate and any interested person shall then by a separate attorney prosecute or pursue and recover such fund or asset for the benefit of the estate, or when, and to the extent that, the services of an attorney for any interested person contribute to the benefit of the estate, as such, *as distinguished from the personal benefit of such person,* such attorney shall be paid such compensation from the estate as the court shall deem just and reasonable and commensurate with the benefit

to the estate from the recovery so made or from such services.

Minn.Stat. § 524.3–720 (emphasis added).

With respect to the Florida proceedings, the district court received expert testimony that the decision to probate the will in Florida was not unreasonable. As for litigation concerning the stock redemption, if Powell had been able to stop any drain on the trust's assets to pay estate taxes it would have been to her personal benefit as a beneficiary, for which section 524.3–720 does not allow reimbursement. Powell further contends that she is entitled to reimbursement because she "kept a major [estate] asset intact," as this court concluded in *In re Estate of Van Den Boom,* 590 N.W.2d 350, 354 (Minn.App.1999), *review denied* (Minn. May 26, 1999). But in *Van Den Boom* a remainderman successfully blocked the sale of the family homestead to pay administration costs, while here Powell unsuccessfully attempted to maintain the liquid assets of the trust at the highest level possible. Thus, we do not conclude that the district court abused its discretion by denying Powell reimbursement for her attorney fees.

### DECISION

The district court did not err or abuse its discretion by granting the trustee's petition for allowance of the final account and for a decree of distribution.

**Affirmed.**